IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ABBEY G. DICKMAN, | Case No. 1:19-cv-01638 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| SHERIFF SCOTT M. KENT, et al., | MEMORANDUM OPINION & ORDER |
| Defendants. | |

Currently pending is Defendants Sheriff Scott M. Kent's and Crawford County/Crawford County Commissioners' (collectively, "Defendants") Motion for Summary Judgment. (Doc. No. 35.) Plaintiff Abbey G. Dickman filed a Response to Defendants' Motion on March 4, 2022, to which Defendants replied on March 31, 2022. (Doc. Nos. 37, 39.) For the following reasons, Defendants' Motion for Summary Judgment is granted.

I.  **Background**

    A.    **Factual Background**

This case stems from a July 9, 2018 incident between Plaintiff Abbey Dickman and former Crawford County Sheriff's Office deputy Jason Tupps. Tupps worked as a deputy sheriff for Defendant Crawford County and was assigned to the Sheriff's Office's Corrections Division, where he was responsible for assisting with jail transports and maintaining the safety and security of the jail. (Tupps Depo., Doc. No. 33-2, PageID# 150.)

On July 9, 2018, Tupps worked his assigned day shift at the jail, which ended at approximately 4 p.m. (*Id.* at PageID# 152.) After his shift, he left the jail in his personal vehicle and ran errands in Marion, Ohio, and Mansfield, Ohio, including purchasing alcohol at a local drive-thru convenience

store in his sheriff's uniform—a violation of Crawford County Sheriff's Office policy. (*Id.* at PageID# 152-54.) At some point, he got behind a car operated by Dickman. (*Id.*)

Dickman was traveling from Mansfield, Ohio to her uncle's house in Galion, Ohio. (Dickman Depo., Doc. No. 33-1, PageID# 133.) Dickman, who was not from the area, was driving on an unfamiliar road when she noticed a black SUV (later determined to be Tupps's vehicle) following closely behind her. (*Id.*) Dickman began to feel scared when she noticed the black SUV tailing her. (*Id.*) She pulled into the driveway of a random private residence to allow the SUV to pass her, but instead, Tupps pulled into the driveway and "bumped" Dickman's rear end with his car. (*Id.*; Doc. No. 33-2, PageID# 153.) At that point, Dickman became "terrified," turned her car around, and drove through the yard of the residence to get back onto the road. (Doc. No. 33-1, PageID# 133.)

Dickman proceeded to drive to her uncle's house, but Tupps pursued her in his vehicle. (*Id.* at PageID# 134.) Shortly after Dickman pulled into her uncle's driveway, Tupps pulled up and blocked the driveway with his SUV. (*Id.*) Dickman and Tupps each exited their vehicles. (*Id.*) At that point, Tupps wielded a gun and ordered Dickman to get onto the ground. (*Id.*) He ordered Dickman to spread her arms and legs on the ground and warned her that if she moved, he would shoot her. (*Id.*) Tupps threatened to shoot Dickman multiple times. (*Id.*)

Tupps, meanwhile, called 911 and claimed that Dickman had attempted to "ram" him with her vehicle. (Doc. No. 33-2, PageID# 153.) Shortly thereafter, officers from the Galion Police Department arrived on the scene. (*Id.*) The Galion officers interviewed Dickman and Tupps. (Doc. No. 33-1, PageID# 134-35.) Throughout her interaction with Tupps, Dickman believed that he was a regular civilian, not an individual affiliated with law enforcement. (*Id.* at PageID# 135.) During their interviews with Tupps, the officers smelled alcohol on Tupps's breath. (Doc. No. 33-2, PageID#

2

154.) Tupps refused to take any field sobriety tests and became belligerent towards the officers. (*Id.*) The officers arrested Tupps. (*Id.*) Initially, Tupps was charged with operating a vehicle while intoxicated, having weapons while intoxicated, and aggravated menacing, and was later charged with abduction, falsification, and bribery. (Defendants' Ex. 5, Doc. No. 35-5, PageID# 223-29.)

After learning of Tupps's conduct, Defendant Sheriff Scott Kent placed Tupps on administrative leave pending the results of an internal investigation. (Kent Decl., Doc. No. 35-1, ¶ 16.) Kent requested that an investigator from a different Ohio Sheriff's Office perform the internal investigation. (*Id.* at ¶ 17.) The internal investigator determined that Tupps violated myriad of policies of the Crawford County Sheriff's Office. (7/30/2018 Internal Investigation, Doc. No. 35-6, PageID# 247.) On August 1, 2018, Kent attempted to serve Tupps with a copy of a pre-disciplinary conference notice, outlining the various alleged policy violations committed by Tupps, but Tupps refused service. (*Id.* at PageID# 260.) On August 6, 2018, Tupps resigned from the Crawford County Sheriff's Office. (Tupps Resignation, Doc. No. 35-7, PageID# 331.) Tupps's criminal trial was held between August 4, 2020 and August 7, 2020. (Doc. No. 19.) A jury found Tupps guilty of falsification but acquitted him on the remaining charges. (*Id.*)

**B.  Procedural History**

Dickman filed her Complaint against Tupps and Defendants in the Crawford County Court of Common Pleas on July 8, 2019. (Doc. No. 1.) In her Complaint, Dickman alleged seven claims: (1) an Ohio law assault and battery claim against Tupps; (2) an Ohio law and federal law false arrest claim against Tupps; (3) an Ohio law willful, wanton, reckless, malicious, and bad faith conduct claim against Tupps; (4) an Ohio negligent hiring, training, supervision, and/or retention claim against Defendants Kent and Crawford County; (5) an Ohio law emotional distress claim against Tupps; (6)

3

an Ohio negligent hiring, training, supervision, and/or retention claim against Defendants Kent and Crawford County; and (7) an Ohio negligence and defamation claim against Tupps. (Doc. No. 1-2, ¶¶ 29-57.) In her Response to Defendants' Motion for Summary Judgment, Dickman conceded that counts four and six, her negligent hiring, training, supervision, and/or retention claims against Defendants, are duplicative. (Doc. No. 37-1, PageID# 374.)

On July 18, 2019, Defendants filed a Notice of Removal under 28 U.S.C. § 1441, arguing that Dickman's lawsuit should proceed in federal court because Dickman's Complaint raised a federal question since she alleged claims that arose under 42 U.S.C. § 1983. (Doc. No. 1, ¶¶ 1, 4.) Therefore, Defendants argued, this Court had original jurisdiction over Dickman's § 1983 claims pursuant to §§ 1331 and 1441. (*Id.* at ¶¶ 4, 5.) Defendants also asserted that supplemental jurisdiction over Dickman's state-law claims was proper under § 1367. (*Id.* at ¶ 6.) Defendants further asserted that because Dickman had not yet properly served Tupps, his consent was not required to effectuate removal, pursuant to § 1446(b)(2)(A). (*Id.* at ¶ 7.)

On December 16, 2019, during a case management conference, Tupps, proceeding pro se, moved to stay this case, pending the resolution of the related, ongoing criminal matter. (Doc. No. 15.) Tupps's motion was unopposed. (*Id.*) Accordingly, the Court stayed the matter and ordered the parties to file periodic status reports regarding the status of Tupps's criminal proceedings. (*Id.*) On October 9, 2020, Dickman and Defendants filed a joint status report indicating that Tupps's criminal trial had concluded and that the stay could be lifted in this civil proceeding. (Doc. No. 19.)

4

Thereafter, the Court lifted the stay and conducted a case management conference on January 21, 2021.[1] (Doc. No. 23.) Tupps did not participate in the case management conference. (*Id.*)

On August 3, 2021, the Court conducted a telephonic status conference. (Doc. No. 25.) Again, Tupps did not participate. (*Id.*) The Court noted Tupps had not participated in the case since December 16, 2019 and, despite having been properly served on October 21, 2019, had not yet filed a responsive pleading. (*Id.*) Thus, the Court advised Dickman's counsel that the deadline for filing an application for entry of default against Tupps would be August 31, 2021. (*Id.*) Dickman never filed an application for entry of default against Tupps.

On January 6, 2022, the Court dismissed all claims against Defendant Tupps for want of prosecution. (Doc. No. 32.) The Court noted that, although Dickman's counsel was advised of the deadline for filing an application for entry of default against Tupps, Dickman filed no such application. (*Id.*) Accordingly, the Court dismissed Dickman's claims against Tupps without prejudice, pursuant to Fed. R. Civ. P. 21. (*Id.*)

On January 26, 2022, Defendants filed the instant Motion for Summary Judgment. (Doc. No. 35.) Dickman filed a Response on March 4, 2022, to which Defendants replied on March 31, 2022. (Doc. Nos. 37, 39.) Defendants' Motion is now ripe for a decision.

**II.     Standard of Review**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in

---

[1] The Court initially attempted to conduct the case management conference on November 24, 2020, but, at the joint request of Dickman and Defendants, rescheduled the conference as Tupps was incarcerated at that time and unable to participate until after December 31, 2020. (Doc. No. 22; ECF 11/24/2020 Order.)

5

favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.,* 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc*., 593 Fed. Appx 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp*., 295 Fed. Appx 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems*., 593 Fed. Appx at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc*., 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox,* 53 F.3d at 150).

### III. Analysis

The Court begins with Dickman's Response. (Doc. No. 37-1.) At the outset of her Response, Dickman clarifies that she only alleged a single federal claim in her Complaint: Count 2, which she alleged against Tupps only. (*Id.* at PageID# 374.) Dickman also clarifies that her Complaint never included a "*Monell* claim" against Defendants because she never alleged any unlawful custom, policy, or practice on Crawford County's part. (*Id.* at PageID# 377.) Dickman clarifies that the only claim that she set forth against Defendants in her Complaint was "an admittedly duplicative state law claim for negligent hiring, training, supervision and/or retention," *i.e.*, Counts 4 and 6. (*Id.*) Further, Dickman "concedes Counts 4 and 6 . . . against the moving Defendants." (*Id.* at PageID# 376.) She indicates that, should the Court exercise supplemental jurisdiction over Counts 4 and 6, she "does not object to the dismissal of these two state-law Counts." (*Id.*)

In the Argument portion of her Response, Dickman argues that this Court lacks subject matter jurisdiction because there are no federal claims pending before this Court. (*Id.* at PageID# 382.) Therefore, Dickman argues, the Court should decline to exercise pendent jurisdiction over the single state-law claim remaining against Defendants. (*Id.*) Alternatively, Dickman argues that if the Court determines that it maintains jurisdiction over this matter, then the Court "can enter judgment for the moving Defendants on the only claim pending against them, state-law Counts 4 and 6, and thereafter remand the remaining claims to the Crawford County Court of Common Pleas . . . ." (*Id.*)

In their Reply, Defendants argue that, contrary to Dickman's assertions, this Court indeed has subject matter jurisdiction over Dickman's claim. (Doc. No. 39, PageID# 390.) Defendants urge this Court to exercise pendent jurisdiction over the remaining state-law claim because it is in the interests of judicial economy to do so. (*Id.*) Defendants argue that, in light of Dickman's concession that she

cannot succeed on her remaining negligent hiring/retention/supervision/training claim, the Court should grant Defendants' Motion. (*Id.* at PageID# 394.) The Court agrees with Defendants.

"The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) (citing *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 758 (6th Cir. 2000)). "When a subsequent narrowing of the issues excludes all federal claims, whether a pendant [sic] state claim should be remained to state court is a question of judicial discretion, not of subject matter jurisdiction." *Id.* (quoting *Long*, 201 F.3d at 758). At the time of removal in the instant case, Dickman raised both state and federal claims, making subject matter jurisdiction proper. *See Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 Fed. App'x 580, 583 (6th Cir. 2011) (concluding same).

Dickman's argument that the court lacks subject matter jurisdiction because the sole federal claim was dismissed is wrong as a matter of law. Although Dickman's only federal claim was dismissed on January 6, 2022, "the dismissal of federal claims from a lawsuit does not deprive courts of supplemental jurisdiction." *Id.* Therefore, Tupps's dismissal did not defeat jurisdiction and the Court retains valid subject matter jurisdiction over Counts 4 and 6. *Id.*

In determining whether to retain jurisdiction over Dickman's state-law claims, "a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Basista Holdings, LLC v. Ellsworth Township*, 710 Fed. App'x 688, 693 (6th Cir. 2017) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). A district court should balance the interests of judicial and economy and avoidance of multiplicity of litigation against "needlessly deciding state law issues." *Harper*, 392 F.3d at 211. Thus, "the doctrine of pendent jurisdiction . . . is a doctrine of flexibility, designed to allow courts to deal with cases involving

8

pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ.*, 484 U.S. at 350.

In *Taylor v. First of Am. Bank-Wayne*, the Sixth Circuit affirmed a district court's decision to retain supplemental jurisdiction over remaining state-law claims because "the interests of judicial economy and fairness both favored the district court's retention of jurisdiction." *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992). The Sixth Circuit noted that the case had been on the district court's docket for nearly two years and that the parties had completed discovery and compiled a "voluminous record." *Id.* The Sixth Circuit further noted that an extensively briefed summary judgment motion was ripe for a ruling by the district court and any remand could have "wasted judicial resources and resulted in additional delay . . . ." *Id.* Therefore, the court concluded that the district court did not abuse its discretion in denying the plaintiffs' motion to remand. *Id.*

Likewise, in *Harper*, the Sixth Circuit affirmed a district court's decision to retain supplemental jurisdiction over remaining state-law claims. *Harper*, 392 F.3d at 211. The Sixth Circuit noted that the case had been on the district court's docket for nearly a year, discovery was complete, and the defendants' summary judgment motions were ripe for a decision. *Id.* Further, the district court "had made several substantive rulings," "was familiar with the facts of the case," and had "already invested significant time in the litigation." *Id. See also, e.g., Basista Holdings, LLC*, 710 Fed. App'x at 695 (concluding that multiple factors weighed in favor of the district court exercising supplemental jurisdiction over state-law claims, including that the district court made several substantive rulings, including on a motion to stay proceedings).

The Court concludes that multiple factors weigh in favor of exercising supplemental jurisdiction over Dickman's remaining state-law claims against Defendants. Most importantly, it

9

would be a significant waste of judicial resources to remand the remaining two claims as Dickman *concedes that these claims should be dismissed*. It makes little sense to remand two meritless state-law claims to the Crawford County Court of Common Pleas so that Crawford County, rather than this Court, can dismiss the claims against Defendants. Though "[c]omity to state courts is considered a substantial interest" when weighing whether to exercise supplemental jurisdiction, there are no comity concerns at issue here because the Court is not "unnecessarily deciding" any state-law issues in this case. *Packard*, 423 Fed. App'x at 584. Indeed, the Court is not deciding any state-law issues at all. Rather, the Court is simply dismissing Dickman's remaining state-law claims in response to Dickman's own concession that Counts 4 and 6 should be dismissed. (Doc. No. 37-1, PageID# 376.)

Several other factors weigh in favor of exercising supplemental jurisdiction over Counts 4 and 6. First, this case has been pending in this Court since July 18, 2019. (Doc. No. 1.) Subtracting the approximately 10 months during which this matter was stayed, this case has been pending before this Court for well over two years. (*See* Doc. Nos. 1, 15, 19.) The Court expended significant time on this case over the last two years, overseeing the case management process and ruling on substantive motions, including addressing motions to stay, to extend discovery deadlines, and to depose Tupps while incarcerated. (*See* Doc. Nos. 25, 30; ECF 9/24/2021 Order.) *See Harper*, 392 F.3d at 211; *Taylor*, 972 F.2d at 1288; *Basista*, 710 Fed. App'x at 695. Second, discovery is complete in this matter and Defendants' Motion for Summary Judgment is now before the Court. *Id.* Third, Dickman's federal claim was only dismissed on January 6, 2022, after the Court allowed Dickman significant time to file an application for an entry of default against Tupps and Dickman failed to do so. (*See* Doc. Nos. 25, 32.) Thus, the Court concludes that the instant case is one "where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over

needlessly deciding state law issues." *Packard*, 423 Fed. App'x at 584 (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).

Curiously, in her Response, Dickman argues that the Court can enter judgment in Defendants' favor on Counts 4 and 6 and "thereafter remand the remaining claims to the Crawford County Court of Common Pleas . . . ." (Doc. No. 37-1, PageID# 382.) It is unclear what claims Dickman believes the Court should remand, as Counts 4 and 6 are the only claims remaining in this case. As Dickman set out at the beginning of her Response, "[t]he only claim set forth in Plaintiff's Complaint against the moving Defendants is . . . [a] state law claim for negligent hiring, training, supervision and/or retention." (*Id.* at PageID# 374.) Dickman's other claims, Counts 1-3, 5, and 7, were asserted against Tupps *only*. (*Id.*) The Court dismissed all claims against Tupps without prejudice on January 6, 2022. (Doc. No. 32.) Therefore, there are no other pending claims to remand.

Accordingly, the Court will exercise its supplemental jurisdiction over Dickman's Counts 4 and 6. Dickman explicitly concedes that judgment should be entered in Defendants' favor on Counts 4 and 6. (*See* Doc. No. 37-1, PageID# 376, 384.) Therefore, the Court grants Defendants' Motion for Summary Judgment.

IV. **Conclusion**

For all the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. No. 35) is GRANTED.

**IT IS SO ORDERED.**

                                        *s/Pamela A. Barker*
                                        PAMELA A. BARKER
Date: June 14, 2022                U. S. DISTRICT JUDGE